Jack FERNANDEZ, Plaintiff,

v.

COMMUNITY ASPHALT, INC., a Florida Corporation, Jose Fernandez, Individually, and Carlos Parodi, Individually, Defendants.

No. 96–0298–CIV.

United States District Court, S.D. Florida.

May 24, 1996.

Moises Kaba, III, Miami, FL, for plaintiff.

James C. Polkinghorn, David H. Spalter, Fisher & Phillips, Fort Lauderdale, FL, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COUNTS I, II, III, V, VI OF PLAINTIFF'S COMPLAINT

ATKINS, Senior District Judge.

THIS MATTER is before the Court on Defendants' above referenced *Motion to Dismiss* (D.E. # 15). After careful consideration of the motion, Plaintiff's response, Defendants' reply, and applicable law, it is hereby,

ORDERED AND ADJUDGED:

(1) Defendants' Motion to dismiss Count I of Plaintiff's Complaint is **DENIED** as to Defendant Community Asphalt, Inc.;

(2) Defendants' Motion to dismiss Count I of Plaintiff's Complaint is **GRANTED** as to Defendants Jose Fernandez and Carlos Parodi;

(3) Defendants' Motion to dismiss Count II of Plaintiff's Complaint is **GRANTED** as to Defendants Jose Fernandez and Carlos Parodi;

(4) Defendants' Motion to dismiss Count III of Plaintiff's Complaint is **GRANTED** as to Defendants Jose Fernandez and Carlos Parodi;

(5) Defendants' Motion to dismiss Count V of Plaintiff's Complaint is **GRANTED**;

(6) Defendants' Motion to dismiss Count VI of Plaintiff's Complaint is **GRANTED**;

### FACTS

The facts as alleged in the Complaint provide the following: Plaintiff was employed by Community Asphalt as a transportation supervisor from March 1985 until his termination on March 11, 1994. Jose Fernandez is the owner and operator of Community Asphalt, and Carlos Parodi was Plaintiff's im-

mediate supervisor. During the course of Plaintiff's employment his work seemed more than satisfactory to his employers, and he was eventually rewarded with various bonuses and advancements.

Beginning around or about September 24, 1993, Plaintiff began to experience various medical debilitations which resulted in a substantial impairment of his physical abilities. Plaintiff alleges that he informed his supervisors of his condition, and requested "reasonable accommodations." Despite his requests, which were reasonable and would not have resulted in undue hardship to Community Asphalt, Plaintiff was denied any accommodations.

Further, beginning in November 1993 and ending with Plaintiff's termination, Plaintiff was the immediate supervisor to another Asphalt employee—April Vortex. Ms. Vortex was subject to sexual harassment and verbal abuse by Carlos Parodi, and others, during the period in question. Plaintiff complained to Carlos Parodi concerning the harassment, but was informed that his complaints were unfounded. The harassment of Vortex continued, and Plaintiff eventually brought his complaints to Jose Fernandez as owner of the company. Jose Fernandez did nothing to stop the harassment of Vortex, and instead, began a campaign of harassment directed against Plaintiff—culminating in Plaintiff's termination.

Plaintiff also alleges that his termination was a result of his age (not disclosed in the complaint). In support, Plaintiff alleges that Defendants made various remarks, including referring to Plaintiff as "a sick old man," and replacing him with a younger individual.

Finally, Plaintiff alleges that he was required to work approximately 60–80 hours a week but was never provided with overtime pay beyond the 40 hours. According to Plaintiff, all of Defendants' actions were intentional, wilful, malicious and recklessly indifferent to Plaintiff's rights.

### DISCUSSION

■ It is well understood that a complaint should not be dismissed for failure to state a claim unless it is beyond a doubt that the claimant can prove no set of facts that would entitle him to relief. *Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir.1986) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss, the court must view the complaint in the light most favorable to the claimant and take the allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

In this case, Plaintiff has included a number of claims against individual Defendants for violations of federal and State laws. Plaintiff has alleged violations of the *Americans with Disabilities Act* of 1990, § 101, 42 U.S.C.A. § 12111(5), ("ADA") (Count I); the *Civil Rights Act of 1964,* as amended, 42 U.S.C.A. § 2000e ("Title VII") (Count II); the *Age Discrimination in Employment Act of 1967,* 29 U.S.C.A. § 621 ("ADEA") (Count III); the *Fair Labor Standards Act,* 29 U.S.C.A. § 207 ("FLSA") (Count IV); violations of *Fla Stat.Ann.* § 760.10 (Counts I & II); and violations of Florida common law for intentional infliction of emotional distress and negligent infliction of emotional distress (Counts V & VI). Plaintiff has named individual Defendants Fernandez and Parodi in Counts I, II, III in the Complaint. These individual Defendants now move to have the counts against them dismissed.

### COUNTS I, II, & III

■ It is axiomatic in this Circuit that suits against individuals are not allowed under either Title VII, or the ADEA. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) ("Individual capacity suits under Title VII [and the ADEA] are ... inappropriate"); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995) (Individuals "cannot be held liable under the ADEA or Title VII"). According to the Eleventh Circuit, "the relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Busby,* 931 F.2d at 772. *See also Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 234 (M.D.Fla.1995) ("although Congress defined 'employer' to include any 'agent,' this does not impose individual liability but only holds the employer accountable for the acts of its

individual agents"); *Marshall v. Miller,* 873 F.Supp. 628 (M.D.Fla.1995).

The definition of "employer" in § 101(5) of the ADA is identical to the definitions in § 2000e(b) of Title VII and § 630(b) of the ADEA, and "this Circuit has previously held that there is no individual responsibility under either of those Acts." *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996). *See also E.E.O.C. v. AIC Sec. Investigations,* 55 F.3d 1276, 1279–82 (7th Cir.1995); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 511 (4th Cir.) ("[T]he ADEA limits civil liability to the employer...."), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583 (9th Cir.1993) (Title VII and ADEA), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

Here Plaintiff argues for individual liability because the definition of employer includes "any agent of such person." The Eleventh Circuit has recently rejected such a reading. "We agree with the Seventh Circuit that the 'agent' language was included to ensure respondeat superior liability of the employer for the acts of its agents." *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996). The *Mason* Court ultimately declared that the ADA should be read identically to Title VII or ADEA interpretations. *Id.* As such, this Court is confident that individual capacity suits may not be brought under any of the Federal statutes involved in this case, and should be dismissed. Given Florida interpretations of *Fla.Stat.Ann.* § 760.10, this Court is likewise confident that individual capacity suits may not be brought under it. *See, e.g., Florida Dept. of Community Affairs v. Bryant,* 586 So.2d 1205 (Fla. 1st DCA 1991).

### COUNT I (as to all Defendants)

■ Defendants have also urged this Court to dismiss Count I of the complaint in its entirety. In support, Defendants argue that Plaintiff has not alleged sufficient facts to make out a prima facie case of disability discrimination. The Court must disagree.

Plaintiff has alleged that his various illnesses substantially impaired many of his daily activities. Further, Plaintiff alleges that his illnesses made it increasingly difficult to perform the essential functions of his occupation. He alleges that his employer was informed of his condition, and that he requested reasonable accommodations to aid in his employment. Plaintiff has further alleged his ability to perform the essential functions of his occupations if he had been given such reasonable accommodation. Based on these alleged facts, Plaintiff has clearly set forth, with sufficient specificity, a prima facie case of discrimination in violation of the ADA.

### COUNT VI

The only issue remaining before the Court concerns the disposition of Plaintiff's various claims under Florida common law. As was stated above, Plaintiff's complaint has alleged intentional infliction of emotional distress (Count V), and negligent infliction of emotional distress (Count VI) against all Defendants.

■ Defendant has argued that Count VI, the negligent infliction of emotional distress claim, should be dismissed because Plaintiff lacks the requisite "physical impact," as required under Florida law. Plaintiff admits that there is no physical impact, but instead argues that the claim should be allowed because the negligence in this case rises to the level of gross negligence. In support, Plaintiff cites *American Federation of Government Employees v. DeGrio,* 454 So.2d 632, 637 (Fla. 3rd DCA 1984) and *Crane v. Loftin,* 70 So.2d 574, 575 (Fla.1954). Even a cursory glance at these decisions makes clear that they do not support Plaintiff's position. These cases both hold that where the alleged conduct goes beyond simple negligence, and amounts to *intentional infliction of emotional distress,* the impact rule is waived. In the absence of physical impact, a claim for negligent infliction of emotional distress will not be allowed under Florida law. *Gilliam v. Stewart,* 291 So.2d 593, 595 (Fla.1974).[1] As a result, Count VI must be dismissed.

---

1. Of course, the Court is aware that Florida courts have fashioned several exceptions to the physical impact rule. *See, e.g. Gonzalez v. Metro-* *politan Dade County Public Health Trust,* 651 So.2d 673 (Fla.1995); *Kush v. Lloyd,* 616 So.2d 415 (Fla.1992); *Champion v. Gray,* 478 So.2d 17

### COUNT V

The final question confronting the Court is whether or not Plaintiff's claim for intentional infliction of emotional distress should be dismissed. After careful review of applicable Florida law, this Court believes that it too is deficient given the circumstances in this case.

■ Plaintiff's entire claim for intentional infliction of emotional distress is predicated on three forms of alleged conduct. First, Plaintiff claims that Defendants subjected him to verbal abuse. Second, that Defendants threatened to withhold important economic considerations from Plaintiff if he did not sign a general release form. Finally, that Plaintiff was illegally terminated.

■ These acts do not, and cannot rise to the level of intentional infliction of emotional distress as that term is defined under Florida law. Florida courts have held that in order to support a finding of intentional infliction of emotional distress, four (4) elements must be present. These are: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. *See Miranda v. B & B Cash Grocery Stores, Inc.,* 1990 WL 107559 at *2 (M.D.Fla.1990) (citing *Metropolitan Life Insurance Co. v. McCarson,* 467 So.2d 277, 278 (Fla.1985)).

The Court finds that the facts as alleged, even when read in the light most favorable to Plaintiff, cannot satisfy the second element—that the conduct is outrageous. According to the *McCarson* court, in order for conduct to be considered outrageous, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCarson,* 467 So.2d at 278. Florida courts direct that the determination whether a set of facts rises to the level of intentional infliction of emotional distress, is a question of law for the Court to decide. *Dependable Life Ins. Co. v. Harris,* 510 So.2d 985, 988 (Fla. 5th DCA 1987); *Ponton v. Scarfone,* 468 So.2d 1009 (Fla. 2d DCA 1985) ("an

evaluation of the claimed misconduct must be undertaken to determine ... whether it is 'atrocious, and utterly intolerable in a civilized community.' That burden falls to the judiciary—it is a matter of law, not a question of fact").

Florida courts have consistently rejected attempts to find intentional infliction of emotional distress based on verbal harassment, even where severe, or racial or sexual discrimination in the workplace. *See Vance v. Southern Bell Tel. & Tel. Co.,* 983 F.2d 1573 (11th Cir.1993). In *Vance,* the Eleventh Circuit upheld the dismissal of Plaintiff's claim for intentional infliction of emotional distress in circumstances *far* surpassing the circumstances present here. In that case, Plaintiff alleged that Defendant had:

1. hung a rope "noose" over her work station shortly after she started work;

2. suspended Plaintiff for an offense in which white workers were not similarly suspended;

3. forcing Plaintiff into a physical altercation with a white employee, and then only disciplining Plaintiff;

4. sabotaging her work;

5. refusing to treat her equally with other employees in disciplinary proceedings unless she agreed to drop pending racial discrimination claims against her employer;

6. refusing to purge stale disciplinary actions from her file;

7. placing her under the supervision of the white woman who had attacked Plaintiff in an earlier altercation;

8. transporting Plaintiff to the wrong hospital after Plaintiff suffered a nervous breakdown;

9. refusing to transfer Plaintiff to another department even after requests from Plaintiff's doctor;

10. constructively discharging Plaintiff.

Even with these alleged facts, the Eleventh Circuit declared that "[a]s we read Florida's decisions, the acts Vance alleged do not rise to the level of extremity of outrageous-

(Fla.1985). However, none of these exceptions is applicable here.

ness required to sustain Vance's claim...." *Vance,* 983 F.2d at 1575 n 7. The alleged harassment in this case is not even as outrageous as that in *Vance.* The sexual harassment was directed at April Vortex, and although Plaintiff may have felt great empathy for Ms. Vortex, and may have suffered for defending her to his employer, Plaintiff was not himself subject to any racial or sexual harassment. *See also Studstill v. Borg Warner Leasing,* 806 F.2d 1005, 1008 (11th Cir. 1986). Although referring to Plaintiff as "a sick old man," or otherwise humiliating him in front of other employees by referring to his age or disability may be reprehensible on the part of Defendants, it cannot, as a matter of law, be considered "outrageous" as that phrase is intended by Florida law.

Courts have also held that in circumstances where employers attempt to coerce employees into signing "releases" of one form or another, with the threat of termination, there still is no actionable claim for intentional infliction of emotional distress. *Food Fair, Inc. v. Anderson,* 382 So.2d 150, 153 (Fla. 5th DCA 1980) (employer forced employee to sign statement admitting theft under compulsion of threatened termination); *Lay v. Roux Laboratories, Inc.,* 379 So.2d 451, 452 (Fla. 1st DCA 1980). Likewise, an employer's withholding of economic benefits has also been declared insufficient. *Golden v. Complete Holdings, Inc.,* 818 F.Supp. 1495 (M.D.Fla.1993).

This Court finds, as a matter of law, that Plaintiff's claims for intentional infliction of emotional distress do not rise to the level necessary for a finding of "extreme and outrageous conduct." As such, Count V must be, and is, dismissed.

DONE AND ORDERED.